John P. Margiotta (*jmargiotta@frosszelnick.com*)
Jennifer Insley-Pruitt (*jinsley-pruitt@frosszelnick.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square
New York, NY 10036
Tel:  (212) 813-5900

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AQUAZZURA ITALIA SRL,

            Plaintiff,

           v.

IVANKA TRUMP, IT COLLECTION LLC,
and MARC FISHER HOLDINGS LLC,

            Defendants.

            **No. 16 Civ. 4782-KBF**

      **SECOND AMENDED COMPLAINT**

            **Jury Demand**

IT COLLECTION LLC and MARC FISHER
HOLDINGS LLC,

            Counterclaim Plaintiffs,

v.

AQUAZZURA ITALIA SRL,

            Counterclaim Defendant.

       Plaintiff Aquazzura Italia SRL ("Aquazzura" or "Plaintiff"), by its undersigned attorneys,

Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against Ivanka Trump, IT Collection

LLC ("IT Collection"), and Marc Fisher Holdings LLC ("Marc Fisher") (each "Defendant," and

collectively, "Defendants"), alleges as follows:

{F2211373.2 }

<u>NATURE OF THE ACTION AND RELIEF SOUGHT</u>

1.　　　This is an action for trade dress infringement, unfair competition, deceptive trade practices, and design patent infringement arising out of Defendants' infringement of Plaintiff Aquazzura's distinctive shoe designs.  Following its launch in 2011, Aquazzura skyrocketed to fame in the fashion world.  Its shoes are coveted by fashionistas and celebrities alike, and are regularly photographed and written about in high profile publications such as *Vogue*, *Harper's Bazaar*, *Elle*, and the *New York Times*, as well as in myriad fashion blogs.  As described in *Elle*, founder of Aquazzura "Edgardo Osorio hit the footwear scene with Aquazzura and quickly joined rank with the biggest players in the shoe game."  Aquazzura markets and sells footwear throughout the United States and worldwide under the AQUAZZURA mark.

2.　　　One of Plaintiff's best-known and best-selling models is the Wild Thing, which is shown below:



Aquazzura Wild Thing Shoe

3.     Fashion blog *Fashion Cognoscente* wrote of the Wild Thing sandal, "While everyone is vying for anything Aquazzura that laces up, these suede tassel fringe heels . . . have become wildly popular, surpassing Aquazzura's previously famed coveted designs."  A *Harper's Bazaar* writer raved, "Fringed, fabulous, and fiercely fashion forward, the Italian-crafted suede footwear has been parading the red carpet (on the likes of Olivia Palermo and Solange Knowles), styling on the streets, and garnering many Instagram likes."  Indeed, the Wild Thing was featured on Lyst's most coveted items of 2015 list, as it was one of the site's most popular sellers of the year.  As set forth more fully below, due to Aquazzura's commercial success, unsolicited publicity, and resulting widespread consumer recognition of its distinctive design, Plaintiff has common law trade dress rights in the configuration of the Wild Thing (the "Wild Thing Shoe").

4.     Upon information and belief, Defendants Ivanka Trump and her company IT partnered with Marc Fisher in or around 2010 to launch her eponymous footwear brand.  Seeking the same success Aquazzura experienced but without having to put in the hard creative work, Defendants resorted to knocking off Plaintiff's popular designs.  Defendants' virtually identical copy of the sought-after Wild Thing Shoe, marketed as the Hettie (the "Infringing Shoe"), is shown below:



Trump Hettie Shoe

Defendants have copied nearly every detail of Plaintiff's well-known and coveted Wild Thing Shoe, from the shape and silhouette to the fringe covering the toes, to the tassel on the heel. Upon information and belief, Defendants even offer their Infringing Shoe in a nearly identical color palette.

5.      This is not the first time that Defendants have copied from Aquazzura. Aquazzura complained to Defendants about their copies of Aquazzura's well-known Belgravia shoes as well, which are shown below:



Trump Necila



Aquazzura Belgravia

6.     Upon information and belief, Defendants ceased their sale of the Trump Necila as a result of Aquazzura's complaint to them regarding the same.

7.     Defendants' flagrant copying of Plaintiff's well-known Wild Thing Shoe design is likely to cause consumers to falsely believe that Defendants' products come from or otherwise are associated with Plaintiff and to harm Plaintiff and the substantial goodwill it has developed in its proprietary Wild Thing Shoe design and trade dress.  Such consumer confusion and harm to Plaintiff will continue as long as Defendants persist in using infringing designs for their own goods.  Moreover, upon information and belief, Defendants have engaged in said conduct in a bad faith attempt to improperly siphon away Plaintiff's customers and potential customers.

8.     To prevent Defendants from causing further harm to Plaintiff and its customers, Plaintiff brings this action for trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, design patent infringement under Section 271 of the U.S. Patent Act, and related claims under New York State law.  Plaintiff seeks an injunction, an accounting of Defendants' profits flowing from their use of infringing designs, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THE PARTIES

9.     Plaintiff is a limited liability company organized and existing under the laws of Italy with a principal place of business at Viale Mazzini 40, 50132 Florence, Italy.  As set forth in greater detail below, Aquazzura owns all rights in and to the Wild Thing Shoe.

10.     Upon information and belief, Defendant Ivanka Trump is a principal of Defendant IT Collection LLC, with an office at 725 5th Avenue, New York, New York 10022.  Upon information and belief, Ivanka Trump exercises control over IT Collection and over the design

process for shoes made in conjunction with her licensee Marc Fisher Holdings LLC. Upon information and belief, Ivanka Trump participated in and directed the design of the Infringing Shoe.

11.     Upon information and belief, Defendant IT Collection LLC is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 725 5th Avenue, New York, New York 10022.

12.     Upon information and belief, Defendant Marc Fisher Holdings LLC is a privately held company located at 777 West Putnam Avenue #10, Greenwich, Connecticut 06830.

<u>JURISDICTION AND VENUE</u>

13.     This Court has subject matter jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1338(a)-(b) because this action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

14.     The Court has supplemental jurisdiction over Plaintiff's state law claims under Section 1367(a) of the United States Judicial Code, 28 U.S.C. § 1367(a).

15.     This Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because Defendants maintain an office in this district, and/or continuously and systematically conduct, transact, and solicit business in this district, because Defendants ship and sell infringing products in and to this district, and because the events giving rise to this Complaint occurred in this state and/or had effects in this state.

16.     Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because Defendants are subject to personal jurisdiction in this district due to their voluntary transacting of business herein, including offering products to

consumers in this district, shipping and selling products in and to this district, and because a substantial portion of the events at issue have arisen and will arise in this judicial district.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.  Plaintiff and Its Well-Known Luxury Footwear

17.  Plaintiff Aquazzura is a renowned manufacturer and seller of luxury fashion footwear.  Aquazzura was founded in 2011 by Edgardo Osorio, who previously studied at the London College of Fashion, and worked for Salvatore Ferragamo and Roberto Cavalli, among others.  From the moment the brand launched, Aquazzura designs became the "must-have" shoes of every season.  Within days of Barney's ordering Aquazzura's debut Spring/Summer 2012 collection, the shoes had sold out.  Aquazzura's popularity has only grown since that point, and today it does millions of dollars of business worldwide.

18.  The Wild Thing Shoe is one of Plaintiff's most popular and well-known designs. It took the fashion world by storm.  Fashion blog *The Souls of My Shoes* dubbed the Wild Thing Shoe the "Shoe of the Moment," calling it a "jaw dropping and foot stomping heel that will turn heads."  The blog *Complete Fashion* wrote that of all the shoes it previously featured, the most popular was the Wild Thing Shoe, which it described as the 'it' summer sandal that "everyone is going fashion crazy" for.  Fashion bloggers everywhere raved about the Aquazzura Wild Thing, while celebrities and "it" girls such as Jamie Chung, Solange Knowles, and Kendall Jenner were featured wearing it.  *Who What Wear* called the Wild Thing Shoe the "feed-flooding Wild Thing sandals," noting that the popular red color had sold out mere months after being released.

19.     Plaintiff's Wild Thing Shoe is sold throughout the United States, through a wide variety of channels, including but not limited to:

- Department stores, such as Barney's, Bergdorf Goodman, Neiman Marcus, and Saks Fifth Avenue;

- Shoe boutiques, including the Aquazzura boutique in Manhattan;

- Web sites, including but not limited to those of the department stores listed above, as well as *polyvore.com*, *shopbop.com*, and *net-a-porter.com*; and

- E-commerce sites such as *farfetch.com*.

20.     Defendants' Infringing Shoe is available through these same channels of trade, including department stores, shoe boutiques, and websites such as *polyvore.com*.

21.     Due to Plaintiff's phenomenal commercial success and the unsolicited media coverage that has followed, the Wild Thing Shoe has become well-known in the fashion industry and among consumers, who have come to associate its distinctive design exclusively with Aquazzura.  In addition, the Wild Thing Shoe has its own distinctive trade dress, which has become extremely well-known, in part as a result of the tremendous press coverage the Wild Thing Shoe has received in New York, nationally, and internationally.

22.     As shown in the photographs in this complaint, the overall appearance and particular combination of elements of the Wild Thing Shoe make it distinctive, those individual elements consisting of the overall shape of the shoe, including the angle and slope of the sole of the shoe, the stiletto heel combined with an open toe, the distinctive fringed vamp (the band covering the toe) and the ankle-wrap closure made of tasseled string (the "Wild Thing Trade Dress").

23.     The striking and distinctive nature of the Wild Thing Trade Dress ensures that, even from far away, consumers will recognize and be drawn to Plaintiff's footwear.

24.     The combination of elements that make up the Wild Thing Trade Dress is not functional for purposes of Section 43(a)(3) of the Lanham Act, 15 U.S.C. § 1125(a)(3), as it is not essential to the use or purpose of the shoe, does not affect the cost or quality of the shoe, and, when used exclusively by Plaintiff, does not put Plaintiff's competitors at a significant non-reputation-related disadvantage.

25.     As a result of Plaintiff's substantial effort and investment in its Wild Thing Shoe, and its commercial success, the Wild Thing Trade Dress has acquired "secondary meaning" in that it has become distinctive and instantly recognizable to the public as exclusively denoting Plaintiff and signaling the high quality of its product.  The Wild Thing Trade Dress achieved this status long before Defendants first began their infringing activities, which are described below.

26.     The Wild Thing Trade Dress represents enormous goodwill of Plaintiff and is a tremendously valuable asset of Plaintiff.

27.     Based on Plaintiff's extensive use, marketing and promotion of its Wild Thing Shoe bearing the Wild Thing Trade Dress, Plaintiff owns common law rights in the Wild Thing Trade Dress in connection with its Wild Thing Shoe.

28.     Plaintiff also is the owner of U.S. Patent No. D776,409, which claims a shoe design that covers Plaintiff's Wild Thing shoe design.  A copy of U.S. Patent No. D776,409 is attached as **Exhibit A**.

**B.     Defendants' Infringing Activities**

29.     Upon information and belief, Defendant Ivanka Trump and her company, Defendant IT Collection, partnered with Defendant Marc Fisher in or around 2010 to launch a

footwear brand.  Upon information and belief, as a result of this collaboration, Defendants are involved in and responsible for the manufacture, importation, distribution, and sale of IVANKA TRUMP branded shoes, including the Infringing Shoe that is the subject of this complaint.  In an interview with *Footwear News*, Ms. Trump stated that "[t]here is not a shoe [she is] not intimately involved in designing."   On information and belief, her intimate involvement included involvement in designing the Infringing Shoe.

30.     Upon information and belief, well after Plaintiff obtained exclusive rights in the Wild Thing Trade Dress, Defendants – in a blatant attempt to trade off the renown of the Wild Thing Shoe and to confuse consumers – began manufacturing and marketing the Infringing Shoe that knocked off the design of the Wild Thing Shoe.

31.     A visual comparison of Defendants' Infringing Shoe shows that it is virtually an exact copy of Aquazzura's Wild Thing, as shown below:



Aquazzura Wild Thing Shoe                              Trump Hettie Shoe

32.     Defendants' Infringing Shoe mimics every key element of the trade dress and patented design of Aquazzura's well-known and distinctive Wild Thing Shoe.

33.     Upon information and belief, Defendants' use of Plaintiff's Wild Thing Trade Dress and patented design is intended to mislead consumers into believing that Defendants' Infringing Shoe and Plaintiff's Wild Thing Shoe are one and the same, or that the Infringing Shoe is made, approved, sponsored or endorsed by Plaintiff, or that the two companies are somehow connected. Defendants' Infringing Shoe is also created with the specific intent to create post-sale confusion as to the source of Defendants' footwear, creating an imitation of Plaintiff's Wild Thing Shoe that cannot be distinguished post-sale.

34.     Indeed, numerous articles suggest that post-sale, the shoes look indistinguishable. For instance, one article describes the Infringing Shoe as an "incredible look-alike" of the coveted Wild Thing Shoe "with an incredible price point."  Another calls Defendants' Infringing Shoe an "Aquazzura Wild Thing Dupe."

35.     The below images illustrate that on wearers' feet, the Wild Thing Shoe and Defendants' Infringing Shoe are virtually indistinguishable:


Aquazzura Wild Thing Sandal


Trump Hettie Sandal

36.     Upon information and belief, Defendants have imported, advertised, offered for sale, and sold the Infringing Shoe in the United States, including in New York State and this judicial district.

37.     Upon information and belief, Defendants are intentionally targeting and seeking to sell the Infringing Shoe to Plaintiff's customers and potential customers who are familiar with the well-known trade dress and patented design of Plaintiff's Wild Thing Shoe.

38.     None of Defendants has never been associated or affiliated with or licensed by Plaintiff in any way, and the Infringing Shoe is not made by, affiliated with, sponsored by, or endorsed by Plaintiff.

39.     Upon information and belief, Defendants are using an infringing design to pass off their Infringing Shoe and allow others to pass off their Infringing Shoe post-sale as Plaintiff's, and otherwise to benefit from the recognition and goodwill of Plaintiff's well-known Wild Thing Shoe and associated Wild Thing Trade Dress and patented design.  Upon information and belief, Defendants are capitalizing on the goodwill and cache associated with Plaintiff's luxury footwear and the well-known trade dress in the Wild Thing Shoe to create and sell less expensive imitations designed to give the appearance post-sale of having the prestige and exclusivity associated with the Aquazzura brand.  Upon information and belief, Defendants' conduct is calculated to confuse and mislead consumers, create a false impression as to the source and sponsorship of Defendants' Infringing Shoe, divert business from Plaintiff, pass off the Infringing Shoe as being authorized and endorsed by Plaintiff, and otherwise falsely misrepresent the nature and quality of Defendants' Infringing Shoe and misappropriate the goodwill associated with Plaintiff and its Wild Thing Trade Dress.

40.     Upon information and belief, Defendants began using and are using the trade dress of the Infringing Shoe (the "Infringing Trade Dress") with full knowledge of Plaintiff's prior exclusive rights, with knowledge of the reputation and goodwill of the Wild Thing Trade

Dress, and with knowledge that these identifiers are associated exclusively with Plaintiff and Plaintiff's Wild Thing Shoe.

41.     By letter dated March 31, 2016, counsel for Aquazzura wrote to counsel for Defendants placing Defendants on notice of Aquazzura's claims regarding the Wild Thing Shoe design, and demanding that Defendants cease sales of the Infringing Shoe.  A true and correct copy of that letter is attached hereto as **Exhibit B**.

42.     Further, at least as early as August 18, 2016, counsel for Aquazzura wrote to counsel for Defendants placing Defendants on notice that Aquazzzura had applied for patent protection for the design of the Wild Thing.

43.     On information and belief, despite these warnings, Defendants have continued to sell the Infringing Shoe.

44.     Upon information and belief, Defendants engaged and continue to engage in the above activities willfully, including with the knowledge that the design of the Infringing Shoe is substantially the same as the designs depicted in U.S. Patent No. D776,409.

45.     The goodwill that Plaintiff has built up in the Wild Thing Trade Dress is put at risk by Defendants' appropriation and use of the Wild Thing Trade Dress in connection with their business and Infringing Shoe.  Defendants' continued use of designs nearly identical to that of the Wild Thing Trade Dress and substantially similar to that depicted in U.S. Patent No. D776,409 in connection with a competing business is likely to continue to cause confusion in the marketplace, because purchasers and potential purchasers will assume that the goods sold by Defendants emanate from or are authorized by, licensed by, endorsed by, associated with, or otherwise connected with Plaintiff and/or Plaintiff's goods.  By virtue of Defendants' use of an

essentially identical design, potential purchasers will assume, incorrectly, that the Infringing Shoe is Plaintiff's.

46.     Defendants' use of trade dress that so closely resembles Plaintiff's Aquazzura Trade Dress unfairly and unlawfully wrests from Plaintiff control over its reputation.

47.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiff's business and goodwill unless restrained by this Court.

48.     Plaintiff has no adequate remedy at law.

FIRST CLAIM FOR RELIEF – FEDERAL
TRADE DRESS INFRINGEMENT OF THE WILD THING SHOE (15 U.S.C. § 1125(a))

49.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

50.     The Wild Thing Trade Dress is used in commerce, is not functional, and has acquired secondary meaning in the marketplace.

51.     Defendants' Infringing Shoe, which upon information and belief is being used in commerce, features trade dress that is confusingly similar to the Wild Thing Trade Dress and is being marketed in a manner designed to confuse consumers.

52.     Defendants' manufacture, distribution, sale and promotion of the Infringing Shoe is likely to cause confusion and mistake and to deceive consumers as to the source, origin or sponsorship of the parties' products.

53.     Upon information and belief, Defendants chose to use their Infringing Trade Dress with actual knowledge of Plaintiff's prior use of and rights in the well-known and distinctive Wild Thing Trade Dress.  Upon information and belief, Defendants used the Infringing Trade Dress in commerce with the intent to cause confusion, to cause mistake, or to deceive.

54.     Defendants' actions constitute willful trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff.

SECOND CLAIM FOR RELIEF – FEDERAL
UNFAIR COMPETITION (15 U.S.C. § 1125(a))

56.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

57.     Defendants' use of the Infringing Trade Dress in connection with its Infringing Shoe constitutes a false designation of origin and a false representation as to the origin of Defendants' Infringing Shoe, is likely to cause confusion, mistake, or deception as to the source of Defendants' Infringing Shoe, and is likely to create the false impression that Defendants' Infringing Shoe is authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.

58.     Upon information and belief, Defendants chose to use the Infringing Trade Dress with actual knowledge of Plaintiff's prior use of and rights in the Wild Thing Trade Dress.  Upon information and belief, Defendants used the Infringing Trade Dress in commerce with the intent to cause confusion, to cause mistake, or to deceive.

59.     Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

THIRD CLAIM FOR RELIEF
UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

60.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

61.     Defendants' conduct complained of herein is likely to confuse the public as to the origin, source or sponsorship of Defendants' Infringing Shoe, or to cause mistake or to deceive the public into believing that Defendants' Infringing Shoe is authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff, in violation of Plaintiff's rights in the Wild Thing Trade Dress under New York State common law.

62.     Upon information and belief, Defendants chose to use the Infringing Trade Dress with constructive and/or actual knowledge of Plaintiff's prior use of and rights in the Wild Thing Trade Dress.  By adopting and using a colorable imitation of the valuable and distinctive Wild Thing Trade Dress, Defendants have been unjustly enriched and Plaintiff has been damaged.

63.     By misappropriating and trading upon the goodwill and business reputation represented by the Wild Thing Trade Dress, Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Plaintiff's expense.

64.     Defendants' use of the Infringing Trade Dress, which is nearly identical to the Wild Thing Trade Dress, constitutes unfair competition under New York common law.

65.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
VIOLATION OF THE NEW YORK DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(N.Y. General Business Law § 349)

66.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

67.     Defendants' use of the Infringing Trade Dress in connection with its Infringing Shoe is consumer-oriented, has the capacity to deceive, and is deceiving the public as to the source or sponsorship of Defendants' Infringing Shoe.  As a result, the public will be damaged.

68.     Defendants' conduct is willful and in knowing disregard of Plaintiff's rights.

69.     Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

70.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

FIFTH CLAIM FOR RELIEF
FEDERAL DESIGN PATENT INFRINGEMENT
OF U.S. DESIGN PATENT NO. D776,409
(35 U.S.C. § 271)

71.     Plaintiff owns U.S. Patent No. D776,409, which issued on January 17, 2017.

72.     U.S. Patent No. D776,409 is valid and subsisting.

73.     Defendants have been on notice of Plaintiff's pending design patent at least since August 18, 2016.

74.     Upon information and belief, Defendants, without authorization from Plaintiff, have manufactured, imported, distributed, advertised, promoted, offered for sale and/or sold an Infringing Shoe, namely, the Hettie, the designs of which is substantially the same as the design set forth in U.S. Patent No. D776,409 and which embodies the design protected by such patent.

75.     Defendants' knock-off Infringing Shoe appropriates the novel ornamental features set forth in U.S. Patent No. D776,409 such that an ordinary observer, giving such attention as a purchaser usually gives, would find Plaintiff's and Defendants' designs to be substantially the

same and would be deceived into believing that Defendants' Infringing Shoe is the same as Plaintiff's patented design.

76.     By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of, and continues to so infringe, U.S. Patent No. D776,409.

77.     On information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and in bad faith, and with knowledge of Plaintiff's exclusive patent rights.

78.     Defendants' acts constitute violations of Section 271 of the Patent Act, 35 U.S.C. § 271.

79.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

(1)     That an injunction be issued enjoining Defendants, their officers, agents, directors, shareholders, principals, licensees, distributors, attorneys, servants, employees, affiliates, subsidiaries and assigns, and all those persons in concert or participation with any of them from:

a.     manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale the Infringing Shoe or any product bearing the Infringing Trade Dress or any other trade dress that is confusingly similar to the Wild Thing Trade Dress;

b.     infringing or inducing infringement of U.S. Patent No. D776,409;

c.      conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, manufacture, production, importation, distribution, displaying, sale or offering for sale of shoes or any related goods and services, in any media or format, using the Infringing Trade Dress, or any other trade dress that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of the protected  Wild Thing Trade Dress;

d.      using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any goods manufactured, imported, advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants, or any services advertised, promoted, sold or offered for sale by Defendants, are in any manner associated or connected with Plaintiff, or are authorized, licensed, sponsored or otherwise approved by Plaintiff;

e.      engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of the Wild Thing Trade Dress;

f.      applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry the Infringing Trade Dress, or any other mark or trade dress consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of the Wild Thing Trade Dress, for shoes or any goods or services related to the foregoing;

g.      assisting, aiding or abetting any other person or business entity in

engaging in or performing any of the activities referred to in subparagraphs (a)

through (f) above;

(2)      That Defendants and those acting in concert or participation with them (including,

but not limited to, their officers, directors, agents, servants, employees, representatives,

attorneys, subsidiaries, related companies, successors, and assigns) take affirmative steps to

dispel such false impressions that heretofore have been created by their use of the Infringing

Trade Dress in connection with the Infringing Shoe, including, but not limited to, delivering up

to Plaintiff's attorneys for destruction all goods, labels, tags, signs, stationery, prints, packages,

promotional and marketing materials, advertisements and other materials (a) currently in

Defendants' possession, custody, or control, or (b) recalled by Defendants pursuant to any order

of the Court or otherwise, incorporating, featuring or bearing the Infringing Trade Dress or any

other simulation, reproduction, copy or colorable imitation of the Wild Thing Trade Dress or

infringing U.S. Patent No. D776,409;

(3)      Directing Defendants to deliver up to Plaintiff's attorneys an accounting of all

profits earned on the Infringing Shoe;

(4)      Directing such other relief as the Court may deem appropriate to prevent the

public from deriving the erroneous impression that any product manufactured, imported,

advertised, promoted, distributed, displayed, produced, sold or offered for sale, or any service

advertised, promoted, sold or offered for sale by Defendants is in any manner authorized by

Plaintiff or related in any way to Plaintiff;

(5)      Directing Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above;

(6)      Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trade dress and patent infringement and unfair competition and that such sums be trebled pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 284;

(7)      Awarding Plaintiff all gains, profits, property and advantages derived by Defendants from Defendants' unlawful conduct and that such profits be enhanced pursuant to 17 U.S.C. § 1117;

(8)      Awarding to Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate;

(9)      Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 285;

(10)      Awarding to Plaintiff interest, including pre-judgment interest, on the foregoing sums; and

(11)      Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Aquazzura Italia SRL hereby demands trial by jury in this action.

Dated:  March 30, 2017                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
              New York, New York


                                      By:     /John P. Margiotta/
                                                 John P. Margiotta
                                                 Jennifer Insley-Pruitt
                                      4 Times Square
                                      New York, New York 10036
                                      Tel: (212) 813-5900
                                      *Attorneys for Plaintiff*